**FLI-FAB, Inc. (formerly Flightex Fabrics, Inc., Formerly The Apponaug Company), Plaintiff,**

v.

**The UNITED STATES of America, George J. Sheehan, Executor under the Last Will of Farrell D. Coyle, Former Collector of Internal Revenue, Defendants.**

Civ. No. 1019.

United States District Court,
D. Rhode Island.

Dec. 20, 1954.

J. N. Welch, James D. St. Clair, Boston, Mass., Matthew W. Goring and James F. Armstrong, Providence, R. I., for plaintiff.

H. Brian Holland, Asst. U. S. Atty. Gen., Andrew D. Sharpe, Homer R. Miller, John K. Clifford, Special Assts. to the Atty. Gen., Jacob S. Temkin, U. S. Dist. Atty., Providence, R. I., for defendants.

DAY, District Judge.

This is an action to recover income and excess profits taxes alleged to have been illegally and erroneously assessed to and collected from the plaintiff taxpayer. It is before this Court upon the motion of the defendants for leave to amend their answer and upon the motion of the plaintiff for summary judgment. Each motion is opposed. In this action the plaintiff seeks to recover income and excess profits taxes amounting to $487,416.24 paid on its net income for the fiscal years ending June 30, 1942, June 30, 1943, June 30, 1945 and June 30, 1946, together with interest thereon. The complaint was served on June 22, 1949.

In substance, the complaint alleges that on June 3, 1944 plaintiff sold its plant and other assets to Mills, Inc., a Maryland corporation, at a loss of $1,-001,319.98; that the plaintiff claimed and the Commissioner of Internal Revenue allowed that amount as an ordinary loss deductible in full from gross income in determining plaintiff's net income for the fiscal year ending June 30, 1944. The complaint also alleges that on June 30, 1944, the plaintiff sold to one Andrew L. Winslow, Jr., as trustee of M.I.T. Trust, a promissory note in the face amount of $300,000 for $200,000 which the plaintiff had received on June 3, 1944 in part payment of the purchase price for the aforesaid sale of its plant and other assets to Mills, Inc. on June 3, 1944, and that it realized a short term capital loss of $100,000 on the sale of said note which it claimed in its tax return for the fiscal year ending June 30, 1944, but that said short term capital loss was disallowed in full by the Commissioner. The complaint further alleges that excluding net capital gains or losses, plaintiff's allowable deductions for said fiscal year exceeded its gross income for said year by $447,945.30 which amount constituted a net operating loss under the provisions of Section 122(a), Internal Revenue Code of 1939, 26 U.S.C.A., and that it was entitled to carry back said operating loss to the years 1942 and 1943 under the provisions of Section 122(b), Internal Revenue Code. It also alleges that the plaintiff had an unused excess profits credit of $245,525.81 for the year 1944 which it was entitled to carry over to the years 1945 and 1946 under the provisions of Section 710(c), Internal Revenue Code.

In the complaint it is also alleged that the plaintiff as a result of its being entitled to carry back its said operating loss in 1944 to the years 1943 and 1942 was entitled to refunds of income and excess profits taxes paid for the years 1942 and 1943; that by using unused excess profits credits for 1944 the plaintiff was entitled by a carry-over of such unused credits to refunds of excess profits taxes for the years 1945 and 1946 and to the refund of income taxes for the year 1946 by virtue of its alleged short term capital loss of $100,000 sustained on the sale of said note on June 30, 1944.

By agreement of the parties several extensions of time were granted for the filing of the answer of the defendants to

the complaint. It was filed on June 16, 1950. In their answer the defendants put in issue the plaintiff's right to a refund of income taxes for the year 1946 as a result of said alleged short term capital loss on the sale of said note; admitted that the Commissioner had allowed the loss of approximately one million dollars on the sale of the plant and other assets to Mills, Inc. as an ordinary loss and did not dispute the validity of his action. The answer also denied that the plaintiff was entitled to the refunds claimed by it and that it was entitled to the carry-back or carry-over losses or unused excess profits tax credits as claimed by it.

No further action was taken by plaintiff or defendants in this action until on or about July 24, 1952, when the former filed a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. This motion alleged that since the answer of the defendants in effect admitted the validity of the loss claimed on the sale of the plant and other assets to Mills, Inc. and that plaintiff was entitled to a deduction in the amount thereof for the fiscal year ending June 30, 1944, it followed as a matter of law that the plaintiff was entitled to the carry-backs and carry-overs claimed. In this event the amount of refunds would be merely a matter of computation.

In September, 1952, the defendants moved for leave to amend their answer so as to put in issue the deductibility of the alleged net loss on said sale of the plaintiff's plant and other assets and tendered a proposed amended answer wherein they admitted that the Commissioner had allowed said loss, alleged that his action was erroneously and inadvertently taken and that the plaintiff was not entitled to deduct any loss on said sale for the fiscal year ending June 30, 1944, or for any other year because said sale was not an arms-length transaction between plaintiff and Mills, Inc. and that fair and adequate consideration

had not been paid for said plant and other assets by the purchaser. Plaintiff objected promptly to this motion and the question of the allowance of leave to file such amended answer has been pending since then.

The record discloses that on or about October 31, 1952, plaintiff propounded fourteen separate interrogatories to the defendants relating to various phases of the transaction involving said sale of the plant and other assets and the sale of said note. In substance, the answers thereto set forth that it was the contention of the defendants with respect to said sale of the plant and other assets that at the time thereof plaintiff's stock was owned by American Associates, Inc. and Andrew Winslow, Jr., trustee for M.I.T. Trust; that the stock of American Associates, Inc. was then controlled by one Royal Little and that he had also been trustee for M.I.T. Trust until he resigned in December, 1943, and was succeeded by said Winslow; that until about one week before said sale the said Little owned the majority of the stock of the purchaser of said plant and other assets; that on May 26, 1944, he allegedly sold his stock to George V. Meehan and Rupert C. Thompson, Trustees for the Rhode Island School of Design in equal shares; that throughout the negotiations culminating in said sale Royal Little was in control of American Associates, Inc., Mills, Inc. (the purchaser) and M.I.T. Trust and that since both the seller and the buyer were controlled and dominated by the same interests and the consideration was inadequate, the transaction should be carefully scrutinized and that the action of the Commissioner in allowing said loss should be challenged.

Under Rule 15(a), Federal Rules of Civil Procedure, a party may amend his pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any

time within twenty (20) days after it is served. With respect to any other amendment the Rule contains this provision:

"* * * Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. * * *"

█ It is well settled that amendments to the pleadings should be allowed¹ with liberality where necessary to bring about a furtherance of justice and where the adverse party will not be prejudiced and the presentation of the merits. will be subserved. Tahir Erk v. Glenn L. Martin Co., 4 Cir., 1941, 116 F.2d 865; International Ladies' Garment Workers' Union v. Donnelly Garment Co., 8 Cir., 1941, 121 F.2d 561; Lloyd v. United Liquors Corp., 6 Cir., 1953, 203 F.2d 789.

█ And this is true even though a different theory of recovery or defense is presented by the proposed amendment. International Ladies' Garment Workers' Union v. Donnelly Garment Co., supra; Heay v. Phillips, 9 Cir., 1952, 201 F.2d 220.

█ The primary question for the consideration of this Court is whether the allowance of the proposed amendment will work an injustice upon the plaintiff and the timeliness of the motion for leave to amend is one of the elements to be considered. However, in and of itself, delay is not enough to warrant the denial of such a motion. It must be shown that to allow the amendment will result in prejudice to the opposite party. W. C. Shepherd Co. v. Royal Indemnity Co., 5 Cir., 1951, 192 F.2d 710; Armstrong Cork Co. v. Patterson Sargent Co., D.C.N.D. Ohio 1950, 10 F.R.D. 534; Hirshhorn v. Mine Safety Appliances Co., D.C.W.D. Pa.1951, 101 F.Supp. 549; Donohue v. New York Life Ins. Co., D.C.D.Conn., 1949, 9 F.R.D. 669.

Plaintiff contends vigorously that the defendants have been guilty of inexcusable delay in making the allegations they now seek to plead and that to permit the amendment would substantially enlarge and change the nature of the trial of this case in such a manner that would seriously prejudice their rights.

█ The instant motion, although heard on October 18, 1954, was filed in September, 1952, slightly more than two years after the filing of the complaint. This date rather than the date of the hearing upon the motion must be considered by me in determining whether there has been any inexcusable delay by the defendants and whether the allowance of the amendment would result in serious prejudice to the rights of the plaintiff.

█ A cursory reading of the complaint is sufficient to show that the factual matters involved herein are numerous, complex and probably difficult of ascertainment. From their very nature they are peculiarly within the knowledge of the plaintiff. It is not unreasonable to assume that the proper investigation thereof required a long period of time. Under the circumstances I cannot find that the defendants have been guilty of inexcusable delay as claimed by the plaintiff. Delay, inexcusable or excusable, is not alone sufficient to warrant denial of leave to amend. There must also be a showing that as a result thereof the rights of the plaintiff would be prejudiced if the amendment were allowed.

██ While it is true that the allowance of the proposed amendment will present a question which may require additional preparation for trial by both the plaintiff and defendants, this is clearly no ground for denial of the motion of the defendants. The issues sought to be raised have been known to the plaintiff since September, 1952. Prior to the commencement of this action they were first decided adversely to the plaintiff by the Internal Revenue Agent who examined plaintiff's tax return and later in its favor by the Commissioner of Internal Revenue. Plaintiff was then required to familiarize itself with the facts sur-

rounding the sales in question, most of which were in its knowledge at any rate. It is undoubtedly true that the unfortunate and untimely death of Mr. Lawrence E. Greene, formerly counsel for the plaintiff, will make it more difficult for the plaintiff to prepare properly for trial, but this fact alone would not justify a denial of defendants' motion.

The question of the deductibility or non-deductibility of the alleged loss sustained on the sale of the plaintiff's plant and other assets is dependent on whether the sale was an arms-length transaction between the plaintiff and the purchaser and whether it was for a fair and adequate consideration. There is no showing in the affidavit filed in support of plaintiff's objection to the motion that the delay of the defendants in requesting leave to amend would prejudice the plaintiff in presenting evidence to support the deductibility of said alleged losses. There is no indication that the officers of the plaintiff who are familiar with the sale of the plant and other assets and the transfer of the note are not available as witnesses. No claim is made that any pertinent records relating thereto are missing or incapable of production. The question of the adequacy or inadequacy of consideration is undoubtedly one for valuation experts. Mr. Greene was not such an expert.

It is my considered judgment that the plaintiff will not be prejudiced by the allowance of leave to amend and that justice in the present case will be furthered if said leave is granted. The motion of the defendants to amend their answer as set forth in their proposed answer filed therewith is accordingly granted.

It is clear that such amended answer raises genuine issues of material fact to be determined at the trial of this action. In view of the existence of these issues it would be improper for me to grant the plaintiff's motion for summary judgment. This motion is therefore denied.